Eric S. Rossman, ISB #4573
erossman@rossmanlaw.com
Erica S. Phillips, ISB #6009
ephillips@rossmanlaw.com
Matthew G. Gunn, ISB #8763
mgunn@rossmanlaw.com
ROSSMAN LAW GROUP, PLLC
350 N. 9th Street, Suite 500
Boise, Idaho 83702
Telephone: (208) 331-2030
Facsimile: (208) 947-2424
*iCourt efiling only!:* rlg@rossmanlaw.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WILLIAM HARTMAN,<br><br>    Plaintiff,<br><br>-vs-<br><br>CANYON COUNTY, IDAHO, a political subdivision of the State of Idaho,<br><br>    Defendant. | CASE NO. _____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW, William Hartman, the above-named Plaintiff, and for cause of action against Defendant Canyon County, Idaho, hereby COMPLAINS AND ALLEGES as follows:

## PARTIES

1.    Plaintiff William Hartman (hereinafter "Mr. Hartman") at all times herein mentioned has been, and presently is, a resident of Canyon County, Idaho.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 1**

2.      Defendant Canyon County, Idaho ("Canyon County") at all times herein mentioned has been, and presently is, a political subdivision of the State of Idaho.

## JURISDICTION AND VENUE

3.      Jurisdiction is appropriate pursuant to 28 U.S.C. § 1331 as this case presents as a claim and question brought under federal law. Pendant jurisdiction over state law claims is appropriate pursuant to 28 U.S.C. § 1367.

4.      Venue is appropriate in the District of Idaho pursuant to 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

5.      After completing two tours of duty as a United States Army combat infantryman in Afghanistan, Hartman returned home to Idaho and began working for Canyon County's solid waste department at the landfill on June 11, 2012. Mr. Hartman held the position of heavy equipment operator.

6.      Despite suffering from combat-induced PTSD, anxiety, and chronic pain, Mr. Hartman was an exemplary, diligent employee for Canyon County with no disciplinary issues or record.

7.      Mr. Hartman was prescribed oxycodone by the Veteran's Administration to treat his combat-related pain.

8.      On February 17, 2017, Mr. Hartman reported to human resources that a female co-worker was being sexually harassed by another male employee, Scott Anderson. Mr. Anderson's employment was subsequently terminated.

9.      On March 18, 2017, Mr. Hartman overslept and was approximately one hour late to work.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 2**

10.    On March 21, 2017, Mr. Hartman met with his direct supervisor, Daniel Pecunia, and David Loper, landfill director, to discuss his tardiness to work on March 18.

11.    Mr. Pecunia, Mr. Loper and Mr. Hartman again discussed the fact that Mr. Hartman suffers from PTSD, anxiety, and chronic pain directly attributable to his combat service in Afghanistan. Mr. Pecunia and Mr. Loper had been aware for years, by virtue of conversations with Mr. Hartman, that Mr. Hartman suffered from combat-induced PTSD, anxiety, and chronic pain, and that Mr. Hartman was prescribed and took oxycodone at the direction of Mr. Hartman's treating physician at the Veteran's Administration. Me. Pecunia and Mr. Loper had never indicated that Mr. Hartman's oxycodone prescription caused them concern.

12.    On March 23, 2017, Jennifer Allen, the solid waste department's human resources representative, asked Mr. Hartman to arrive to work early to meet with her. During this meeting Ms. Allen informed Mr. Hartman that she had just become aware that he was prescribed and took oxycodone during his employment.

13.    Mr. Hartman confirmed his oxycodone prescription, the fact that he had such prescription since the very early stages of his exemplary employment with Canyon County, and that Mr. Loper and Mr. Pecunia were aware of Mr. Hartman's oxycodone prescription for the entirety of his employment.

14.    Furthermore, Mr. Hartman informed Ms. Allen that Debbie Jenks, the landfill secretary, had Mr. Hartman's oxycodone prescription on file. Mr. Hartman successfully underwent drug testing on at least nine occasions during his employment with Canyon County. On the occasion of each such test, Hartman disclosed his oxycodone prescription on the test paperwork

which he completed for Ms. Jenks. Ms. Allen confirmed with Ms. Jenks that Mr. Hartman had disclosed his oxycodone prescription and the prescription was on file.

15.     Ms. Allen cited zero negative issues with Mr. Hartman's job performance, only briefly referencing his oversleeping on March 18, 2017. Indeed, on four occasions Mr. Hartman was provided with a medical clearance from his physician to return to work following medical procedures, and on two of these occasions, Mr. Hartman returned to work early: on one occasion one month early and on one occasion two months early.

16.     On March 27, 2017, Ms. Allen informed Mr. Hartman that the on-file prescription for his oxycodone was out-of-date and demanded that Mr. Hartman provide an updated prescription within four days, no later than March 31, 2017.

17.     Mr. Hartman expressed his belief that the prescription demand and sudden interest in his oxycodone usage was retaliatory in nature due to his reporting of sexual harassment against Scott Anderson, but Ms. Allen was wholly dismissive of such concerns.

18.     Mr. Hartman immediately called the Veteran's Administration and requested a copy of his oxycodone prescription but was informed such requests must be made in person.

19.     Mr. Hartman took the day off on March 28, 2017, to go to the Veteran's Administration in Boise and request that a copy of his updated oxycodone prescription be sent to Ms. Allen at Canyon County.

20.     The Veteran's Administration informed Mr. Hartman that his request would take time to process and transmit to Ms. Allen. Mr. Hartman informed Ms. Allen of this information from the Veteran's Administration.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 4**

21.     On April 3, 2017, Ms. Allen informed Mr. Hartman that she had not received his updated oxycodone prescription from the Veteran's Administration, and that she must receive it within four days, no later than April 7, 2017.

22.     Mr. Hartman again took the day off on April 4, 2017, to go to the Veteran's Administration and attempt to resolve the issue.

23.     Mr. Hartman was informed by the Veteran's Administration that his first request had been mailed for processing, and his second request would be faxed for processing in order to help expedite the process.

24.     On April 7, 2017, Ms. Allen called Mr. Hartman and demanded an explanation regarding her failure to receive a copy of his updated oxycodone prescription from the Veteran's Administration.

25.     Mr. Hartman again explained to Ms. Allen every proactive step he had taken to obtain the updated prescription and the Veteran's Administration's responses thereto. Mr. Hartman reminded Ms. Allen that he has no control over the Veteran's Administration and explained that in his experience, and that of many other veterans, the Veteran's Administration processes paperwork incredibly slowly.

26.     Ms. Allen, in direct contradiction of her earlier statement on March 18 and March 23, 2017, informed Mr. Hartman that Ms. Jenks had no outdated oxycodone prescription information for him on file.

27.     Again, Ms. Allen cited zero negative issues with Mr. Hartman's job performance.

28.     As of April 14, 2017, the Veteran's Administration had not provided an updated copy of Mr. Hartman's oxycodone prescription.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 5**

29.    Mr. Loper placed Mr. Hartman on unpaid administrative leave. In doing so, Mr. Loper cited zero negative issues with Hartman's job performance.

30.    In addition to the updated oxycodone prescription, Mr. Loper made an additional demanded that Mr. Hartman provide, within one week, a written medical release and authorization from his treating physician at the Veteran's Administration.

31.    Mr. Hartman objected to being placed on unpaid administrative leave due to the slowness of the Veteran's Administration, a process entirely outside his control, and informed Mr. Loper that he would do his best to obtain the demanded prescription and release as soon as possible.

32.    Without Mr. Hartman's prior knowledge or consent, his accrued vacation and compensatory leave hours were used/subtracted during the period of his unpaid administrative leave.

33.    Mr. Hartman called the Veteran's Administration that day, April 14, 2017, to arrange an appointment.

34.    On April 18, 2017, the Veteran's Administration had not scheduled an appointment with Mr. Hartman, and he again followed up therewith.

35.    A Veteran's Administration nurse informed Hartman that his treating physician had extremely limited availability and that he could not be seen for non-emergent treatment for several months. The nurse requested that Hartman fax his prescription and release request yet again and she would "see what [she] could do."

36.    Mr. Hartman immediately informed Ms. Allen and Mr. Loper of his compliance efforts with the Veteran's Administration.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 6**

37.     On April 21, 2017, Mr. Loper informed Mr. Hartman that his employment would be terminated on April 28, 2017, unless the Veteran's Administration had fully complied with the entirety of Canyon County's paperwork demands. Again, Mr. Loper cited zero concerns regarding Mr. Hartman's job performance.

38.     Mr. Hartman made extensive further calls and in-person requests to the Veteran's Administration to attempt to obtain its compliance with Canyon County's demands, to no avail.

39.     On April 28, 2017, Mr. Loper gave Hartman notice that he intended to terminate Mr. Hartman's employment on May 2, 2017. Again, Mr. Loper cited zero concerns regarding Mr. Hartman's job performance.

40.     Mr. Hartman's employment was terminated on May 2, 2017.

## COUNT ONE

### Disability Discrimination in Violation of Idaho Human Rights Act and the Americans with Disabilities Act

41.     Mr. Hartman hereby realleges the allegations contained in paragraphs 1 through 40 as set forth above and incorporates the same herein by reference.

42.     Mr. Hartman is a qualified individual within the meaning of the Americas with Disabilities Act based on his combat-induced PTSD, anxiety, and chronic pain stemming from his combat tours as an infantryman in Afghanistan.

43.     Canyon County failed to engage with Hartman in an interactive process to determine whether his disability could be reasonably accommodated prior to terminating Mr. Hartman's employment. Canyon County's decision to terminate Hartman's employment was based on Mr. Hartman's disability.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 7**

44.     The actions of Canyon County in failing to engage with Mr. Hartman in an interactive process to determine whether his disability could be reasonably accommodated and terminating Mr. Hartman's employment because of his disability is in violation of the Idaho Human Rights Act, Idaho Code § 67-5901, *et seq*., and the Americans with Disabilities Act, which prohibits discrimination-based on disability.

45.     As a result of Canyon County's violation of the Idaho Human Rights Act, Idaho Code § 67-5901, *et seq*., and the Americans with Disabilities Act, Hartman is entitled to compensatory damages including, but not limited to, lost wages and lost benefits in an amount to be determined with specificity at trial.

46.     Mr. Hartman is entitled to recover his attorney fees and costs incurred in pursuing this matter pursuant to 42 U.S.C § 12117(a) and any other applicable provisions of Federal or Idaho law.

47.     Mr. Hartman hereby reserves this paragraph for the inclusion of a claim for punitive damages pursuant to Idaho Code § 6-1604.

## COUNT TWO

### *Retaliation for Reporting Gender Discrimination in Violation of Title VII*

48.     Mr. Hartman hereby realleges the allegations contained in paragraphs 1 through 47 as set forth above and incorporates the same herein by reference.

49.     Mr. Hartman was unlawfully retaliated against, and ultimately terminated by Canyon County, because he reported that a female co-worker was suffering sexual harassment at the hands of Scott Anderson.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 8**

50.     Mr. Hartman is entitled to recover his attorney fees and costs incurred in pursuing this matter pursuant to 42 U.S.C. § 2000e and any other applicable provisions of Federal or Idaho law.

51.     Mr. Hartman hereby reserves this paragraph for the inclusion of a claim for punitive damages pursuant to Idaho Code § 6-1604.

<u>**COUNT THREE**</u>

*Termination in Violation of Uniformed Services Employment and Reemployment Rights Act of 1994*

52.     Mr. Hartman hereby realleges the allegation contained in Paragraphs 1 through 51 as set forth above and incorporates the same herein by reference.

53.     Canyon County at all times herein mentioned, was and now is an employer within the meaning of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), United States Code, Chapter 43, Part III, Title 38.

54.     From June 11, 2012, to and through May 2, 2017, Mr. Hartman was employed by Canyon County and was an "employee" within the meaning of USERRA.

55.     An employer is liable for wrongful termination where the motivation for the termination contravenes the USERRA.

56.     An important right recognized by USERRA is that an employer may not discharge, discriminate or retaliate against an employee on the basis of the employee's veteran status or military service.

57.     Canyon County's retaliation against and termination of Mr. Hartman based on the ability, or lack thereof, of the Veteran's Administration, Mr. Hartman's healthcare provider based

**COMPLAINT AND DEMAND FOR JURY TRIAL - 9**

on his veteran status, to provide paperwork it demanded, when it demanded it, constitutes a material breach of USERRA.

58.     As a direct and proximate result of Defendant's breach of USERRA, Mr. Hartman has suffered damages in excess of $10,000 to be proven with specificity at trial.

59.     Mr. Hartman is entitled to recover his attorney fees and costs incurred in pursuing this matter pursuant to 38 U.S.C. § 4323, Idaho Code § 12-121, I.R.C.P. 54, and any other applicable provisions of Idaho law.

60.     Mr. Hartman hereby reserves this paragraph for the inclusion of a claim for punitive damages pursuant to Idaho Code § 6-1604

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for Judgment, Order and Decree of this Court as follows:

1.     For judgment of the court awarding Plaintiff damages in excess of $10,000.00, for both economic and non-economic damages, incurred as a result of Defendant's termination of Plaintiff in violation of the Idaho Human Rights Act, the Americans with Disabilities, Title VII, and USERRA;

2.     For prejudgment interest on all damages recovered at the rate set forth within Idaho Code § 28-22-104;

3.     For Plaintiff's reasonable attorney fees and costs incurred in prosecuting this action; and

4.     For such other and further relief as court deems just and necessary.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 10**

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial pursuant to Idaho Rule of Civil Procedure 38(b) and the Constitution of the United States of America.

DATED this _____ day of January, 2020.

ROSSMAN LAW GROUP, PLLC


Matthew G. Gunn
Attorneys for Plaintiff

Z:\Work\H\Hartman, William\Federal Pleadings\Complaint.docx

**COMPLAINT AND DEMAND FOR JURY TRIAL - 11**